UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| KEITH VAN SANT, | : | **CASE NO. 1:17-CV-01552** |
|---|---|---|
| Plaintiff | : | |
| v. | : | (Chief Magistrate Judge Schwab) |
| CHOICE HOTELS INTERNATIONAL, INC., *et al.*, | : | |
| Defendants | : | |

# <u>MEMORANDUM</u>
March 28, 2019

**I. Introduction.**

The plaintiff Keith Van Sant fell on a ramp while exiting the Quality Inn Enola. He claims that his fall was caused by the negligence of the defendants, Choice Hotels International, Inc. and Kumar, Inc. d/b/a Quality Inn Enola. The defendants have moved for summary judgment. For the reasons that follow, we will deny the defendants' motion for summary judgment.

## II. Background and Procedural History.

Van Sant began this action in the United States District Court for the Eastern District of Pennsylvania. That court transferred the case to the Middle District of Pennsylvania. The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.

We set case management deadlines, and the parties engaged in discovery. The defendants then moved for summary judgment.

## III. Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477

3

U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## IV. Material Facts.

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the moving party means that those facts are deemed admitted. Further, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, "[o]nce the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

5

Here, the defendants filed a statement of material facts in support of their motion for summary judgment, and Van Sant filed a response. Because Van Sant is the non-moving party, we accept his version of any properly disputed facts.

Van Sant lives in New Jersey and works at Amtrak as a Supervisor of Train Operations, Freight Services and Logistics. *Doc. 41-2* (Defendants' Concise Statement of Material Facts) at ¶ 1 and *Doc. 45-1* (Plaintiff's Concise Statement of Material Facts) at ¶ 1. Van Sant and his wife checked into the Quality Inn Enola on Saturday, September 12, 2015. *Id.* at ¶ 2. There was a ramp at the front entrance of the Quality Inn Enola. *See Doc. 41-1* at 36-43 (photographs of entrance and ramp). The ramp and surrounding area was partially covered with a carpet, and there was a mat on top of the carpet on part of the ramp. *Id.*[1] There was some tape at or near the sides of the ramp, but at places the tape was frayed and at places it was completely missing. *Id.*

Van Sant walked up and down the ramp at the front entranceway three to four times before falling while he walked down the ramp on Sunday, September 13, 2015, at approximately 4:00 p.m. *Doc. 41-2* (Defendants' Concise Statement of

---

[1] The plaintiff testified that the photographs of the ramp accurately represent the conditions when he fell. *Doc. 41-2* (Defendants' Concise Statement of Material Facts) at ¶ 13 and *Doc. 45-1* (Plaintiff's Concise Statement of Material Facts) at ¶ 13. The parties' statements of material facts do not describe the ramp. The description of the ramp is based on the Court's review of the photographs.

Material Facts) at ¶ 3 and *Doc. 45-1* (Plaintiff's Concise Statement of Material Facts) at ¶ 3[2] In each of those trips before his fall, he saw the ramp, and he knew he was walking on a ramp. *Id*. at ¶ 4.[3] He "plainly" saw the yellow lines on each side of the ramp, he used the yellow lines to center himself, he "was conscious of making sure [he] was at the center of the ramp with the load that [he] was carrying," and he squared his body to the slope of the ramp because of his safety training. *Id*. He did not slip, trip, stumble, fall, or have any other problems walking up and down the ramp. *Id*. While exiting the hotel on those trips, he saw signs on the sliding glass doors that said, "Caution Step Down," which signs were remnants from the time before the ramp was built and there as a concrete step in the area. *Id*. at ¶ 5.

The weather on Sunday, September 13, was a mixture of sun and clouds without rain. *Id*. at ¶ 7. By 3:00 p.m., the entranceway was dry. *Id*. at ¶ 8. Van Sant did not have wet feet, and he did not see any wet surfaces. *Id*. He was wearing

---

[2] Although Van Sant purports to deny this statement, his denial, which is based on his assertions that he fell on the right-hand edge of the ramp, where there was no yellow tape or other marking to indicate a change in elevation and that he had not previously stepped in that exact area, does not meet the substance of the statement.

[3] In paragraph 4 of Defendants' Concise Statement of Material Facts, the defendants included many facts within one sentence. We have broken down the facts into smaller segments to aid comprehension. Although Van Sant purports to deny the entirety of the facts in paragraph 4 of the Defendants' Concise Statement of Material Facts, his denial, which is based on the testimony of the owner and general manager that there was some tape missing on the side of the ramp, does not meet the substance of the facts set forth in paragraph 4.

Nike walking shoes. *Id.* at ¶ 9. It was light outside, and although the entranceway was under a canopy, he "was able to see reasonably well in the canopy area." *Id.* at ¶ 10. While exiting the front entranceway immediately before his fall, he did not recall passing any hotel employees, staff, or guests, and he did not talk to anyone from the time he left his room until he fell. *Id.* at ¶ 11. He did not see whether anyone was at the front desk because he "was paying attention to what was in front of [him]." *Id.* at ¶ 12.

Before Van Sant fell, he knew the ramp—like all ramps—spanned a change in elevation. *Id.* at ¶ 14. Van Sant described how he fell:

> I walked out the front door. As I was walking down - - because of the rumpled area on the bottom, I was watching the lines there. I saw a gap in the yellow lines, which in my industry means it's safe to step there. Because of the problem with the rumples, I was afraid if I stepped on it the wrong way I would fall down.
>
> So I stepped with my right foot to the right in the area that didn't have any marks. And when I stepped down, it was an uneven surface so my foot went down forward and so my body twisted and fell down as a result of that.

*Doc 45-2* at 22 (Van Sant Dep. Tr. at 71–72).

Based on his knowledge and recollection, his step on an uneven surface caused him to fall. *Doc. 41-2* (Defendants' Concise Statement of Material Facts) at

8

¶ 19 and *Doc. 45-1* (Plaintiff's Concise Statement of Material Facts) at ¶ 19. He was looking down at the time, and the ruffles in the carpet did not cause him to fall:

> Q   Okay.  Did your fall happen because you tripped over one of the ruffles in the carpet?
>
> A   Not that I recall.
>
> Q   Okay.  Immediately prior to your fall, where were you looking?
>
> A   Where was I looking?  I was looking right down.  I was looking down toward here and here, looking for a safe place to step down.
>
> Q   And you're pointing to the lower end of the ramp in Van Sant 4?
>
> A   Right.  This area in here, given that I had remembered these ruffles from before.
>
> Q    In the moment immediately before the fall happened, where were you looking?
>
> A   I was looking right down that general area.
>
> Q   Okay.  Gesturing in the same area, the bottom of the ramp on Van Sant 4?
>
> A   Correct.  I was looking down the whole time.
>
> Q   Okay.  Was there anything that obstructed your view of the area where your foot was headed before the fall?  Something in the way, something you were carrying?
>
> A   No, there was nothing physically there.  What you see here is what was there at that time.

*Id*. at ¶ 20. He was not carrying anything or distracted for any reason, he was wearing his glasses, nothing obstructed his view, his footwear was not loose, and his shoelaces were tied. *Id*. at ¶ 21.

Van Sant knew there were other entrances to the building because his safety training makes him mindful of them. *Id*. at ¶ 22. Although he had used another entrance before he fell to access a restaurant on the northside of the hotel, it is not clear that he was aware of any other means of accessing his car in the front parking lot other than the front entranceway. *Doc. 45-1* (Plaintiff's Concise Statement of Material Facts) at ¶ 22.

## V. Discussion.

Van Sant claims that the defendants were negligent. "['] Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances.'" *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 221 (Pa. 2018) (quoting *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)). "In Pennsylvania, the elements of negligence are: a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the

resulting injury; and actual loss or damage to the plaintiff." *Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018).

The defendants contend that they are entitled to summary judgment because Van Sant cannot satisfy the first element of a negligence claim—the duty element. Under Pennsylvania law, which is applicable in this diversity case, the duty or "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). Here, the parties agree that Van Sant was an invitee.

Generally, "[p]ossessors of land owe a duty to protect invitees from foreseeable harm." *Id*. (citing Restatement (Second) of Torts §§ 341A, 343, 343A (1965)). More specifically:

> With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,
>
> > "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger."

*Id.* at 123 (quoting Restatement (Second) of Torts §343). But "'[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Id.* (quoting Restatement (Second) of Torts § 343A).

In other words, in general, "a possessor of land has no duty to protect a business invitee against 'known' or 'obvious' hazards." *Berman v. Radnor Rolls, Inc.*, 542 A.2d 525, 531 (Pa. Super. Ct. 1988) (citing *Carrender*, 469 A.2d 120; *Jones v. Three Rivers Mgmt. Corp.*, 394 A.2d 546 (Pa. 1978); *Bowser v. Hershey Baseball Ass'n*, 516 A.2d 61 (Pa. Super. Ct. 1986)). "[T]here are two separate and disjunctive lines of inquiry on this 'no-duty' issue: one subjective and the other objective." *Devlin v. Home Depot USA, Inc.*, No. 3:12-CV-00766, 2013 WL 6835409, at *3 (M.D. Pa. Dec. 23, 2013) (footnote omitted). "The subjective inquiry concerns whether the hazard is 'known' to the invitee." *Id.* "For a danger to be 'known,' it must 'not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.'" *Carrender*, 469 A.2d at 124 (quoting Restatement (Second) of Torts § 343A cmt. b). "The objective inquiry concerns whether the hazard is 'obvious' to [a] reasonable person in the plaintiff's situation." *Devlin*, 2013 WL 6835409, at *3.

"A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Carrender*, 469 A.2d at 123 (quoting Restatement (Second) of Torts § 343A cmt. b.). "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Carrender*, 469 A.2d at 124.

Here, a reasonable factfinder might well conclude that the risk posed by the ramp was known to Van Sant and would be obvious to a reasonable person. But given the photographs of the ramp, which show that the carpet covering the ramp and surrounding area obscured where exactly the ramp ended, as well as Van Sant's testimony that he was trying to avoid the rumples in the carpet and he stepped where there was no yellow tape, thinking it was safe to do so, a reasonable factfinder might also conclude that Van Sant was not aware of the risk and that the risk was not obvious to a reasonable person. Thus, there is a genuine factual dispute about whether the condition was known or obvious. And so, summary judgment is not appropriate in this case.

## VI. Summary.

For the foregoing reasons, we will deny the defendants' motion for summary judgment (doc. 41). An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge